## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAVID ANDREW STEVENSON,

                    Petitioner,

          v.                                    CASE NO. 18-3054-JWL

PAUL SNYDER[1],

                    Respondent.


## MEMORANDUM AND ORDER TO SHOW CAUSE

This matter is a pro se petition for writ of habeas corpus filed in March 2018 pursuant to 28 U.S.C. § 2254 by Petitioner David Andrew Stevenson, a state prisoner currently incarcerated at Winfield Correctional Facility in Winfield, Kansas. In September 2019, United States District Judge Sam A. Crow dismissed this matter without prejudice. (Doc. 16.) It comes now before the Court on Petitioner's motion to reopen, filed February 27, 2025. (Doc. 18.) For the reasons explained below, the motion to reopen will be granted and Petitioner will be directed to show cause why this matter should not be dismissed.

### Background

This case has a long and somewhat convoluted procedural history. Because it was only recently assigned to the undersigned United States District Judge, the history of this matter is set forth here in detail. If Petitioner believes the undersigned has misconstrued any of Petitioner's

---

[1] When this action began, Petitioner was incarcerated at Lansing Correctional Facility (LCF), so he named as Respondent Sam Cline, the LCF warden. (Doc. 1, p. 1.) The proper respondent in a federal habeas action by a state prisoner is the person who has custody over the petitioner. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held."). Petitioner is now incarcerated at Winfield Correctional Facility. Thus, Paul Snyder, the current warden of Winfield Correctional Facility, where Petitioner is confined, is hereby substituted as Respondent pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts and Federal Rules of Civil Procedure 25(d) and 81(a)(4).

arguments, Petitioner should so inform the court, in writing, in his response to this order.

### *State Court Criminal Proceedings and Direct Appeal*

In March 2008, Petitioner's father "was found dead after being crushed by a hydraulic truck bed." *State v. Stevenson*, 297 Kan. 49, 50 (2013) (*Stevenson I*). The State charged Petitioner with premeditated first-degree murder, presenting evidence that Petitioner's father was "incapacitated by blows to his head before he suffered crushing injuries consistent with being pinned by the bed of the truck." *Id.* Petitioner, on the other hand, argued that the hydraulic failure was accidental and that because of "his activities that day . . . [,] he lacked the opportunity to have killed his father and staged the accident." *Id.* at 51. In 2009, a jury in Gove County, Kansas convicted Petitioner of premeditated first-degree murder and the state district court sentenced him to life in prison without the possibility of parole for 25 years. *Id.* at 49, 51.

Petitioner pursued a direct appeal, in which he raised three issues related to prosecutorial misconduct and jury instructions. *Id.* at 49-50. While the direct appeal was pending, Petitioner filed a motion for DNA testing of the coveralls his father was wearing at the time of his death. (Doc. 7, p. 15.) In light of Petitioner's offer "to pay for the cost of testing," the state district court ordered the State to make the coveralls "available to the lab of Defendant's choosing." *See State v. Stevenson*, Gove County Case No. 2008-CR-000032, entries dated Mar. 28, 2013 and May 1, 2013; *see also* (Doc. 7, p. 23). Petitioner did not pursue the DNA testing further, however, due to a lack of funds. (Doc. 7, p. 15.) In an opinion issued on April 12, 2013, the Kansas Supreme Court (KSC) affirmed Petitioner's conviction. *Stevenson I*, 297 Kan. at 50. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. (Doc. 7, p. 3.)

### *First K.S.A. 60-1507 Proceeding*

In May 2013, Petitioner filed in state district court a pro se motion for writ of habeas corpus

under K.S.A. 60-1507 that asserted 27 grounds for relief. *Stevenson v. State*, 2017 WL 5180847, *2 (Kan. Ct. App. Nov. 9, 2017) (*Stevenson II*). He was appointed counsel, who raised additional ineffective assistance of counsel claims in a second amended pretrial questionnaire. *Id.* On the day of the pretrial conference, Petitioner filed a pro se supplement to his K.S.A. 60-1507 motion, asserting "additional grounds for relief, including *Brady* violations and additional ineffective assistance of counsel claims." *Id.* (citing *Brady v. United States*, 397 U.S. 742 (1970)).

In April 2015, the state district court held a 2-day evidentiary hearing on the K.S.A. 60-1507 motion. *Id.* During the hearing, Petitioner withdrew the motion for DNA testing that he had filed in the underlying criminal case. (Doc. 7, p. 15.) In March 2016, the district court issued a lengthy order denying relief under K.S.A. 60-1507; it dismissed 11 claims for lack of jurisdiction, dismissed 5 claims as untimely, and held that Petitioner had not met his burden to show he was entitled to relief on the remaining claims. *Stevenson II*, 2017 WL 5180847, at *2. In April 2016, Petitioner then filed in the K.S.A. 60-1507 action a motion for DNA testing, which the state district court summarily denied, holding that a request for DNA testing is not properly brought in an action under K.S.A. 60-1507. (Doc. 7, p. 15, 20-22.)

Petitioner appealed[2], asserting:

(1) his trial counsel was ineffective when counsel failed to present any evidence regarding unanswered phone calls made to Stevenson's father; (2) the State committed a *Brady* violation when it did not turn over cell phone records; (3) his trial counsel was ineffective when counsel failed to impeach a witness' testimony; (4) his trial counsel was ineffective when counsel failed to challenge the State's timeline; (5) his trial counsel was ineffective when counsel failed to call a favorable witness; (6) his trial counsel was ineffective when counsel failed to object to the State's closing arguments; (7) prosecutorial error occurred when the State failed to correct testimony it knew to be false; (8) prosecutorial error occurred when the State failed to inform Stevenson that witnesses would be testifying differently; and (9) prosecutorial error occurred when the State vouched for a witness' credibility during closing argument.

---

[2] It seems that Petitioner began the appeal process pro se but eventually—after an initial round of briefing was completed—attorney Cheryl Stewart was appointed to represent him. (*See* Doc. 5, p. 1.)

*Stevenson II*, 2017 WL 5180847, at *2.

In July 2017, Petitioner sent the Kansas Court of Appeals (KCOA) a motion to discharge Cheryl Stewart, the attorney appointed to represent him on appeal; a motion to proceed pro se; and a motion to supplement the record on appeal. (*See* Doc. 7, p. 19.) The clerk of the state appellate courts filed the motion to discharge counsel, but held the other two motions without filing pending a ruling on the first motion. *Id.* In August 2017, the KCOA denied the motion to remove counsel and the clerk returned the additional two motions without filing them. (*See* Doc. 8-1, p. 25.)

In an opinion issued on November 9, 2017, the KCOA first addressed Petitioner's claims of trial error. *Stevenson II*, 2017 WL 5180847, at *2. The KCOA noted that state law and Kansas Supreme Court Rules clearly state that the party claiming error has the burden to ensure the record on appeal affirmatively shows prejudicial error and "[w]ithout such a record, an appellate court presumes the action of the trial court was proper." *Id.* at *3. The KCOA held: "[F]atal to all of Stevenson's alleged trial errors is his failure to include in the record on appeal the transcript of the proceedings surrounding his underlying trial and conviction." *Id.* It concluded: "Because Stevenson has failed to supply us with the trial record, it is impossible for us to properly consider his claims, and his claims of alleged trial errors are dismissed." *Id.* at *4.

Next, the KCOA turned to Petitioner's requests for DNA testing. *Id.* at *4. The district court had held that Petitioner had failed to establish that "there is a reasonable probability the jury would have reached a different result" if trial counsel had obtained DNA testing of the coveralls. *Id.* Because Petitioner did not provide the trial transcripts to the KCOA, the KCOA could not substantively review this decision and presumed that the district court's conclusion was proper. *Id.* The KCOA further noted that because Petitioner voluntarily withdrew the motion for DNA testing he filed in his criminal case, he could not complain on appeal that the district court did not grant

the motion. *Id.* at 5-6.

Finally, the KCOA turned to the request for DNA testing in the motion Petitioner filed after the order denying K.S.A. 60-1507 relief. *Id.* at *6. The KCOA held that the district court had been incorrect to summarily dismiss the motion on the basis that requests for DNA testing may not be brought in a K.S.A. 60-1507 action. The motion was not included in the record on appeal[3], however, so it was "impossible for [the KCOA] to conduct a de novo review of the denial of the motion to determine if it complied with the requirements of K.S.A. 21-2512." *Id.* Accordingly, the KCOA affirmed. *Id.*

Attorney Stewart did not file a petition for review by the KSC. Petitioner filed a motion for extension of time to file a pro se petition for review, but the Kansas Appellate Courts' Clerk's Office refused to file the pro se motion because Petitioner was represented by counsel. (Doc. 7, p. 16.) Petitioner also filed a motion seeking to file a pro se petition for review and he submitted a pro se petition for review, but the KCOA denied the motion for leave to file a pro se petition for review and the clerk's office returned the pro se petition for review without filing it. *Id.* at 17-18.

### *28 U.S.C. § 2254 Petition*

On March 6, 2018, Petitioner filed in this Court a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and a memorandum in support. (Docs. 1 and 2.) Because the petition was not on the required, court-approved form, Petitioner was directed to resubmit his petition on the form, which he promptly did. (Docs. 3 and 4.) The petition contained five grounds for relief. As Ground One, Petitioner asserted that the state courts violated his statutory right to effective assistance of counsel in his K.S.A. 60-1507 appeal. (Doc. 4, p. 5.) As Ground Two, Petitioner asserted that trial counsel provided ineffective assistance by failing to present to the jury evidence

---

[3] Petitioner now disputes this finding, asserting that the motion for DNA testing was included in the record on appeal. (*See* Doc. 7, p. 15.)

of five unanswered calls to his father's cell phone, which was found near his body and covered in his blood. *Id.* at 6. Petitioner asserted that evidence of the timing of those calls "would indicate his death was before petitioner arrived" at the scene and that "cell phone location records (tower) would give absolute proof that his death was before the petitioner arrived—and supports petitioner's claim of Actual and Factual Innocence [*sic*]." *Id.*

As Ground Three, Petitioner asserted that prosecutors knowingly used perjured testimony to obtain his conviction, based on differences between the initial reports given to investigators by a State witness, Todd Stevenson[4], and Todd's subsequent trial testimony. *Id.* at 8. He further contended that the prosecutor in closing argument referred to and relied upon the "false timeline" created by Todd's trial testimony in arguing that Petitioner had the opportunity to commit the crime. *Id.* As Ground Four, Petitioner asserted that the State failed to disclose evidence that would have exonerated him—"cell phone location ('tower') records" that Petitioner claimed would (1) prove his father's death occurred before Petitioner arrived at the scene, (2) prove Todd testified falsely, and (3) show both Petitioner's and his father's locations at 4:00 p.m. on the day in question. *Id.* at 9. Petitioner asserted that the State's claim that these records do not exist was undermined by "evidence and statements made on the record." *Id.*

As Ground Five, Petitioner asserted the violation of his rights under the Confrontation Clause and that the State withheld an expert witness who would have testified to exculpatory information that could have altered the result of the trial. *Id.* at 15. Specifically, Petitioner argued:

> The information is in the form of an affidavit by a State's expert, whom tested the truck, stated; "It would not be possible for an individual reaching across the truck-frame around the area of the pump to lower the hoist." Directly contradicting the prosecution's theory of petitioner's involvement in the death of his father. This information was either inadvertently or by design suppressed from the jury, when in opening statement, prosecutor stated; "this witness will say the truck is in perfect working condition." This witness was never called on to testify,

---

[4] *See Stevenson v. State*, 2023 WL 2723285, *3 (Kan. Ct. App. Mar. 31, 2023) (unpublished) (*Stevenson III*).

effectively suppressing the defense from cross-examination.

*Id.* (all errors in original). To his credit, Petitioner candidly admitted that none of the five asserted Grounds were raised in his direct appeal, although he argued that any default of such claims was due to the ineffective assistance of Attorney Stewart during the appeal from the denial of his K.S.A. 60-1507 motion. *Id.* at 5-11, 15-16. Moreover, Petitioner pointed out that he had tried to raise the issues in a petition for review to the KSC, but the Kansas appellate court clerk rejected the pro se filings due to Petitioner being represented by Stewart, who did not file a petition for review. *Id.*

A couple of weeks after Petitioner submitted the petition on the required form, he filed an "Affidavit in Support of Procedural Default to be Excused for Cause." (Doc. 5.) Therein, Petitioner advised this Court that in January 2018, he had filed a complaint with the Kansas Disciplinary Administrator's Office (KDAO) regarding the representation provided Stewart during his K.S.A. 60-1507 appeal. *Id.* at 1. He further advised that, according to letters he had received from the KDAO, his complaint had been docketed and investigated, culminating in a phone conference in which the investigator informed Petitioner that his allegations had been validated and the investigator intended to report his findings to the Kansas Disciplinary Administrator and recommend sanctions against Stewart. *Id.* at 1-2.

On April 6, 2018, United States District Judge Sam A. Crow, who was assigned to preside over this federal habeas matter, issued a notice and order to show cause (NOSC) explaining that "[b]ecause petitioner did not complete the final step in the state appellate review process, his habeas claims, which were presented to the state courts in his [K.S.A. 60-1507] action, are subject to dismissal due to procedural default." (Doc. 6, p. 4.) Judge Crow then noted that federal habeas courts may consider procedurally defaulted claims only if the petitioner shows "cause for the failure to present the claim in state court and actual prejudice as a result of the violation of federal

Case 5:18-cv-03054-JWL     Document 21     Filed 03/07/25     Page 8 of 21

law or that the failure to consider the claim would result in a 'fundamental miscarriage of justice.'" *Id.* at 4-5. Judge Crow identified the standard for showing that the failure to consider Petitioner's claims would result in a fundamental miscarriage of justice and allowed Petitioner time in which to make that showing. *Id.* at 5-6. In addition, Judge Crow granted Petitioner leave to submit an amended petition "that presents claims that were properly exhausted in his direct appeal." *Id.* at 6.

Petitioner promptly filed an amended petition. (Doc. 7.) The grounds therein will be discussed in greater detail below, but for now, suffice it to say that the amended petition contains four grounds for relief. Petitioner asserts that a fundamental miscarriage of justice occurred when: (Ground One) the state courts denied his requests for DNA testing of his father's coveralls; (Ground Two) Petitioner's trial counsel failed to present the cell phone records to the jury; (Ground Three) the prosecution knowingly presented and relied upon false trial testimony; and (Ground Four) the State failed to disclose "cell phone 'Tower Data' that supports Alibi and Actual Innocence. [*sic*]" *Id.* at 5-6, 8, 9. In the amended petition, Petitioner again points out that he attempted to exhaust these claims by raising them in a pro se petition for review in his K.S.A. 60-1507 appeal, but the state courts rejected his filings because he had counsel of record, Stewart, who did not file a petition for review. *Id.* at 5-11.

Approximately 2 weeks after filing the amended petition, on May 2, 2018, Petitioner filed a response to the NOSC. (Docs. 8 and 9.) He later filed a second response to the NOSC (Doc. 10), a motion for status hearing (Doc. 11), and a motion for leave to exhaust newly discovered evidence (Doc. 14). Judge Crow took no action in this matter until September 25, 2019, when he issued a memorandum and order dismissing this matter without prejudice. (Doc. 16.) In addition to setting out the relevant caselaw, that order explained:

> Petitioner asserts that the failure to consider his defaulted claims would result in a fundamental miscarriage of justice. He asserts that he has made a

colorable showing of his actual innocence that warrants review of his claims, pointing to the failure of trial counsel to introduce evidence of unanswered calls from his cell phone to that of his father, the victim, on the day of his death and the failure to introduce cell tower records for the two phones at trial. Finally, he notes the failure of his post-conviction appellate counsel to include trial transcripts in the record on appeal, which the KCOA found precluded review.

. . . .

The difficulty with petitioner's claim is that it does not appear that the cell tower records that he identifies as evidence of his actual innocence have ever been developed. In his motion to include or grant leave to exhaust newly discovered evidence (Doc. 14), he states that a blood-covered phone was discovered by the victim's body and taken into evidence by law enforcement, that the lead KBI investigator stated that no calls were made to the phone on the day of the victim's death, and that it later was determined that five calls were made to the phone on that day, which all went unanswered. According to petitioner, the State reported that it unsuccessfully attempted to get the cell tower data, and his counsel also sought the records from Verizon Wireless but was told they were not available. Therefore, on the present record, the Court cannot find that petitioner has presented new evidence that supports a claim of actual innocence sufficient to excuse procedural default.

Petitioner asks the Court to order an evidentiary hearing and appoint counsel or, in the alternative, grant leave to exhaust his new claim in state court. *Id*. at p. 3. The Court finds that petitioner's request to pursue the production of cell tower records should be presented in the first instance to the state district court, and the Court will dismiss this matter without prejudice to allow him to do so.

(Doc. 16, p. 3-5.) In a footnote at the end of the language quoted above, the order stated: "After proper presentation of this matter in the state courts, petitioner may move to reopen this matter." *Id.* at 5 n.1.

### The Second K.S.A. 60-1507 Proceeding

On February 25, 2021, Petitioner filed in state district court a second motion for habeas corpus relief pursuant to K.S.A. 60-1507, arguing that he is actually innocent of the crime of conviction. (Doc. 18, p. 1.) Petitioner's arguments can be organized by three general topics. The first is the allegedly false trial testimony of Todd Stevenson regarding the time that Petitioner arrived at the family farm on the day of his father's death. *See Stevenson v. State*, 2023 WL

2723285, *3 (Kan. Ct. App. Mar. 31, 2023) (unpublished) (*Stevenson III*). Petitioner argued that the State improperly relied on the false testimony, Petitioner's trial counsel was ineffective in how counsel dealt with the testimony, and appointed counsel during Petitioner's first 60-1507 proceeding was ineffective for not effectively pursuing a claim based on the issue. *Id.*

The second topic is the cell phones. Petitioner asserted that his father's cell phone contained information that would have exonerated him and that his trial counsel was ineffective for not obtaining that information and using it effectively at trial. *Id.* Petitioner also argued that the cell phone information was material evidence the State suppressed or failed to disclose in violation of *Brady*. *Id.*

The third topic is the possibility of the State's theory of the crime. *Id.* Petitioner contended that his trial counsel was ineffective for not calling the State's expert witness to testify to his opinion, made in an affidavit after testing the truck, that it was not possible for one person "'reaching across the truck-frame around the area of the pump, to lower the hoist.'" *Id.* According to Petitioner, the State failed to prove that one person could have lifted and held Petitioner's father's unconscious body while also lowering the truck bed. *Id.* Moreover, even if it was possible, the person would have left a significant amount of DNA on Petitioner's father's clothing. *Id.* Thus, in this second K.S.A. 60-1507 proceeding, Petitioner moved for appointment of counsel, sought to further develop the cell phone information by forensic examination of his father's cell phone, and requested DNA testing of his father's coveralls. *Id.* at 3-4; (Doc. 18, p. 1).

The state district court held a nonevidentiary hearing on the issues in June 2021 at which the State was represented by counsel and Petitioner proceeded pro se. *Id.* The district court then denied Petitioner's motion as untimely and successive, holding that Petitioner had not shown the manifest injustice required by state law to overcome these procedural bars. *See Stevenson III*, 2023

WL 2723285, at *4, 6 (citing K.S.A. 2020 Supp. 60-1507(f)). The district court also denied the motion for DNA testing. *Id.* at *5.

Petitioner appealed. In an opinion issued on March 31, 2023, the KCOA affirmed the holding that the second K.S.A. 60-1507 motion was untimely and that Petitioner had not shown the manifest injustice statutorily required for the district court to extend the statute of limitations. *Id.* at *6. It found that Petitioner had not "given a legally sufficient reason why he failed to file the motion within the one-year time limitation," nor did he make a colorable claim of actual innocence. *Id.* at *6-7. Accordingly, the KCOA affirmed the denial of the K.S.A. 60-1507 motion. *Id.* at *9.

The KCOA also denied a related motion "to obtain postconviction discovery of the cell phone," holding that Petitioner had "not shown a reasonable possibility that there is discoverable information on the cell phone that could affect the outcome of this proceeding—that no reasonable juror would have convicted him." *Id.* at *7. With respect to the district court's denial of Petitioner's motion for DNA testing, however, the KCOA found that the district court erred by holding a nonevidentiary hearing at which the State was represented by counsel without appointing counsel to represent Petitioner. *Id.* at 8-9. Thus, the KCOA remanded the motion for DNA testing for further proceedings. *Id.* at 9.

Although the precise timing is unclear, Petitioner was at some point appointed counsel to represent him in this appeal and that counsel filed a petition for review of the KCOA rulings adverse to Petitioner. (Doc. 18, p. 2.) The KSC denied the petition for review on April 23, 2023, which allowed the remand proceedings to move forward. *Id.*

Petitioner was appointed counsel for the remand proceedings and a hearing on the motion for DNA testing occurred in September 2024. *Id.* at 2-3. The state district court denied the motion in a written order entered on September 17, 2024. *See Stevenson v. State*, Gove County District

Court Case No. 2021-CV-000002. The publicly available records of the Gove County District Court further reflect that Petitioner's counsel filed a notice of appeal on September 23, 2024 and that Petitioner filed a pro se motion to reconsider on October 1, 2024.

### *The Return to Federal Court*

On February 27, 2025, Petitioner filed in this Court a pro se motion to reopen the federal habeas matter Judge Crow dismissed in 2019. (Doc. 18.) Therein, he sets forth a brief summary of the events of his second K.S.A. 60-1507 proceeding through the district court's denial of the motion for DNA testing during the remand proceedings. *Id.* at 1-3. Petitioner asks the Court to "reopen this case where he can prove his innocence." *Id.* at 3. To the motion, he has attached photographs of his father's bloody cell phone lying in a pool of blood and a copy of the petition for review filed by counsel in his second K.S.A. 60-1507 proceeding. (Doc. 18-1, p. 1-17.)

On February 28, 2025, this matter was reassigned to the undersigned for all further proceedings. (Doc. 19.) The Court then directed the Clerk to reopen this matter for the limited purpose of considering and ruling on the motion to reopen. (Doc. 20.) The Court has carefully considered the motion before it, the prior filings in this case, and the related state court cases, as available. The motion to reopen (Doc. 18) will be granted. In order for this case to proceed, however, the Court requires additional information from Petitioner and will also direct Petitioner to address anew the issue of procedural default.

### Discussion

First, the Court will direct Petitioner to clarify the current status of the state-court proceedings on his second K.S.A. 60-1507 motion. As noted above, the records of the Gove County District Court reflect that a notice of appeal was filed on September 23, 2024 from the denial on remand of the motion for DNA testing. Petitioner must inform this Court, in writing, of

whether any appeal has been docketed and, if not, whether he intends to docket such an appeal. Moreover, Petitioner should inform the Court of any further information available on the pro se motion for reconsideration he filed in state district court on October 1, 2024 and whether Petitioner is still represented in any related matters by attorney Bach Tho Hang, who was appointed during the remand proceedings.

Second, the Court wishes to make clear to Petitioner that "proving his innocence," as he put it in his motion to reopen this matter, is not an avenue in and of itself to obtain federal habeas relief. "A distinction exists between claims of actual innocence used as a gateway and as a freestanding basis for habeas relief." *Farrar v. Raemisch*, 924 F.3d 1126, 1131 (10th Cir. 2019). "The Supreme Court has repeatedly sanctioned" actual innocence claims as creating a gateway by which to pass beyond the procedural bar of procedural default in state court, but it

> has never recognized freestanding actual innocence claims as a basis for federal habeas relief. To the contrary, the Court has repeatedly rejected such claims, noting instead that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings."

*Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). Even more clearly, the Tenth Circuit has stated that a "claim of actual innocence does not serve as the basis for granting habeas relief." *Pacheco v. El Habti*, 48 F.4th 1179, 1186 (10th Cir. 2022).

In other words, even if Petitioner presents to this Court a colorable claim of actual innocence, the writ will not issue on that basis alone. A colorable claim of actual innocence will excuse the procedural default, for example, of claims that Petitioner's constitutional rights were violated during his criminal trial that ended in his conviction and the resulting term of imprisonment. But excusing the procedural default does not guarantee that this Court will agree with Petitioner's claims that a constitutional right was violated during the trial; it only allows the

Court to consider the constitutional claims. Petitioner must still then persuade the Court "that he is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a).

The Court has reviewed the operative petition in this matter, which is the amended petition filed on April 16, 2018. (Doc. 7.) Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires the Court to review a habeas petition upon filing and to dismiss it "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Judge Crow's NOSC regarding procedural default was conducted as part of the Rule 4 review and the 2019 dismissal order was also entered in the context of the Rule 4 review. (*See* Doc. 6, p. 1 (referring to Rule 4 review); Doc. 16, p. 1 (same).) Thus, reopening this matter means that the undersigned must take up and complete the Rule 4 review and determine whether, in light of the state-court proceedings that have occurred since the 2019 dismissal of this matter, it plainly appears from the operative petition and attached exhibits that Petitioner is not entitled to relief in the district court.

Because Petitioner is proceeding pro se, the Court liberally construes the amended petition during this review, but it may not act as Petitioner's advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). "[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). It "'may not rewrite a petition to include claims that were never presented.'" *Childers v. Crow*, 1 F.4th 792, 798 (10th Cir. 2021) (citation omitted).

Ground One of the amended petition asserts that the "State Court denied post motion for DNA Testing creating a 'Fundamental Miscarriage of Justice' supporting 'Actual Innocence' claim. [*sic*]" (Doc. 7, p. 5.) In the portion of the form for identifying the facts that support Ground

One, Petitioner refers to his motion for DNA testing of the coveralls, which also included a motion for order to reenact the State's theory of the crime, and Petitioner notes that the coveralls are in possession of the State and have never been tested for Petitioner's DNA. *Id.* As noted above, actual innocence is not an independent basis for federal habeas relief.

Rather, a person in custody pursuant to the judgment of a State court may seek relief under § 2254 only on the grounds that he or she "is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a). Even liberally construed, Ground One of the amended petition does not identify a federal or Constitutional right that was violated by the state courts denying a post-conviction motion for DNA testing. Thus, it fails to state a claim on which federal habeas relief may be granted and it is subject to dismissal from this action. Petitioner will be directed to show cause, in writing, why Ground One should not be dismissed for failure to state a claim on which federal habeas relief may be granted.

Ground Two of the amended petition asserts: "A 'Fundamental Miscarrage of Justice' exists as trial counsel failed to present to the jury evidence supporting a 'Actual Innocence' claim. [*sic*]" (Doc. 7, p. 6.) This ground for relief appears to relate to the cell phone records related to the location of Petitioner's phone and his father's phone, as well as the time of the five unanswered calls to his father's phone. *Id.* Thus, liberally construed, Ground Two asserts a claim that trial counsel was ineffective, in violation of the Sixth Amendment to the United States Constitution, by failing to present to the jury evidence related to the locations of his and his father's cell phones and evidence of the five unanswered calls to his father's cell phone on the day of his death, which Petitioner believes would have caused a reasonable juror to not convict him.

As Ground Three, Petitioner asserts that "[a] 'Fundamental Miscarr[i]age of Justice' exists when known false testimony is allowed to replace the truth in obtaining a conviction. [*sic*]" (Doc.

15

7, p. 8.) The facts alleged in support of Ground Three involve the allegedly false trial testimony by Todd Stevenson which Petitioner alleges the prosecutors relied upon at trial despite knowing it was false. *Id.* The Court liberally construes Ground Three to assert a claim that Petitioner's Fourteenth Amendment Due Process rights were violated by the State's presentation of and reliance on allegedly false testimony during his trial. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. . . . The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.").

Finally, as Ground Four of the amended petition, Petitioner asserts: "A 'Fundamental Miscarriage of Justice' exists as the State failed to disclose cell phone 'Tower Data' that supports Alibi and Actual Innocence. [*sic*]" *Id.* at 9. Although Ground Four also does not identify a specific Constitutional or federal right that was violated, the Court liberally construes it to assert a claim that Petitioner's Fourteenth Amendment Due Process rights were violated by the State's failure to disclose the "cell phone 'tower data.'" *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *Brady*, 373 U.S. at 87.

The Court pauses to again emphasize to Petitioner that if this liberal construction of the four grounds for relief asserted in the operative amended petition is incorrect, Petitioner should so inform the Court, in writing, and should clarify the grounds for relief.

Turning to the question of exhaustion, the Court concurs with Judge Crow's determination that the grounds for relief asserted in the operative amended petition are not exhausted and procedurally defaulted. As Judge Crow also recognized, however, Petitioner may overcome this procedural default by showing "cause for the default and actual prejudice as a result of the alleged

16

violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### *Cause and Prejudice*

To demonstrate cause for the procedural default, Petitioner must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [petitioner.]" *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted).

Petitioner argued to Judge Crow that the procedural default of his claims occurred because of unconstitutionally deficient representation provided by Attorney Stewart during the appeal of his first K.S.A. 60-1507 motion. The United States Supreme Court has explained that in order for ineffective assistance of counsel to constitute "cause" that excuses a procedural default, "the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" which "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Thus, for Petitioner to use the ineffective assistance of Stewart in his first K.S.A. 60-1507 appeal as cause to excuse his procedural default, he must have argued to the state courts that Stewart provided ineffective assistance of counsel.

Petitioner attempted to do so in his second K.S.A. 60-1507 proceeding. But he filed his second K.S.A. 60-1507 motion well beyond the one-year period in which he was statutorily

required to do so. *See Stevenson III*, 2023 WL 2723285, at \*2, 6 (holding the deadline for timely filing a K.S.A. 60-1507 motion alleging ineffective assistance of counsel during the first K.S.A. 60-1507 appeal was December 21, 2018 and noting that Petitioner's second K.S.A. 60-1507 motion was filed February 25, 2021). By doing so, he procedurally defaulted his claim that Stewart was unconstitutionally ineffective. That means that he may not now use Stewart's alleged ineffective assistance to show cause for the procedural default of the claims he wishes to pursue in this federal habeas matter unless he shows good cause why he untimely filed the second K.S.A. 60-1507 motion and that actual prejudice resulted from Stewart providing ineffective assistance of counsel.

Petitioner will be granted time in which to make any arguments regarding cause for the procedural default of the claims in this federal habeas matter and prejudice that resulted from the constitutional violations alleged therein. If he wishes to continue to rely on Stewart's allegedly ineffective assistance during the first K.S.A. 60-1507 appeal, he must clarify when Stewart was appointed to represent him, as it appears from the information now before this Court that Petitioner proceeded pro se for at least part of the appellate process.

### *Actual Innocence Exception*

Procedural default also may be excused if Petitioner can show that the failure to consider the defaulted claim would result in a fundamental miscarriage of justice. To proceed under this exception, he "must make a colorable showing of factual innocence." *See Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). A petitioner seeking relief under a defaulted claim and asserting a claim of innocence must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The evidence

must be new and reliable. *See Schlup*, 513 U.S. at 324. The United States Supreme Court has explained that on a claim of entitlement to the actual innocence exception, "[t]he habeas court must make its determination . . . 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 328.

In the time since Judge Crow dismissed this matter, the Tenth Circuit has further clarified the application of the actual innocence exception. It has explained that to obtain this exception, a federal habeas petitioner is not required to conclusively exonerate himself; rather, his "burden at the gateway stage is to demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'" *See Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *House*, 547 U.S. at 538, 553 (2006)). However,

> tenable actual-innocence gateway pleas are rare, arising only in an extraordinary case. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.

*Fontenot*, 4 F.4th at 1031 (citations and quotation marks omitted). "An actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021).

Because of these clarifications and the sprawling nature of the litigation leading to this point, this Court will allow Petitioner time in which to file, in writing, any arguments he wishes to make regarding the actual innocence exception to the general rule barring this Court from considering procedurally defaulted grounds for relief.

## Conclusion

In summary, the motion to reopen this matter will be granted. The Court has reviewed the operative amended petition and agrees with Judge Crow's prior determination that the grounds for

relief asserted therein were not exhausted and are procedurally defaulted. This Court cannot consider asserted grounds for federal habeas relief that were procedurally defaulted unless Petitioner (1) shows that cause existed for the default and actual prejudice occurred from the alleged constitutional violation, or (2) makes a colorable claim of actual innocence by identifying new, reliable evidence that, had it been presented to the jury, would have it more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt.

Petitioner's assertion that the ineffective assistance of counsel in the appeal of his first K.S.A. 60-1507 proceeding was the cause of his defaulting his now-asserted grounds for federal habeas relief must fail because Petitioner did not exhaust in state court his argument that that counsel provided unconstitutionally ineffective assistance. Rather, he presented it only in a manner that was procedurally prohibited.

To the extent that Petitioner has thus far argued that he is entitled to the actual innocence exception to the bar against considering defaulted grounds for federal habeas relief, the Court notes that the application of that exception has been clarified by the Tenth Circuit since this matter was dismissed. Moreover, the record of this habeas matter does not include a cohesive representation of Petitioner's arguments on this point. Accordingly, Petitioner will be granted time in which to submit any argument he wishes this Court to consider regarding his entitlement to the actual innocence exception.

Finally, the Court also notes that Ground One of the operative amended petition in this matter fails to allege the violation of a constitutional or federal right; thus, it fails to state a claim on which federal habeas relief can be granted. Petitioner will be granted time in which to show cause, in writing, why Ground One should not be dismissed for this reason. If Petitioner fails to respond to this order, this matter will be dismissed without further prior notice to him.

20

**IT IS THEREFORE ORDERED** that the motion to reopen (Doc. 18) is **granted**. The clerk shall reopen this matter.

**IT IS FURTHER ORDERED** that Paul Snyder, Warden of Winfield Correctional Facility, where Petitioner is confined, is substituted as Respondent in this matter.

**IT IS FURTHER ORDERED** that Petitioner is granted to and including **April 21, 2025**, in which to show good cause, in writing, why Ground One should not be dismissed for failure to state a claim on which federal habeas relief can be granted and why this Court should consider the merits of the claims in the amended petition despite Petitioner's procedural default of those claims in state court.

**IT IS SO ORDERED.**

DATED:   This 7th day of March, 2025, at Kansas City, Kansas.


S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge