IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID ANDREW STEVENSON,

        Petitioner,

 v.             CASE NO. 18-3054-JWL

PAUL SNYDER,

        Respondent.

**MEMORANDUM AND ORDER**

  This matter is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner and Kansas state prisoner David Andrew Stevenson. It comes before the Court on Petitioner's response (Doc. 22) to this Court's Memorandum and Order to Show Cause (MOSC) (Doc. 21) regarding the procedural default of the grounds asserted in the operative amended petition. The Court has reviewed Petitioner's response and has liberally construed the arguments therein and, for the reasons explained below, will direct Respondent Paul Snyder to prepare and submit a limited Pre-Answer Response addressing only Petitioner's argument that he is entitled to the actual innocence exception to the bar on this Court considering claims that were procedurally defaulted in state court.

### Background

  The complex procedural history that led to the current federal habeas petition is set forth in detail in the Court's prior order and will not be repeated here. (*See* Doc. 21, p. 1-12.) For purposes of the present order, it is sufficient to say that in March 2008, Petitioner's father "was found dead after being crushed by a hydraulic truck bed." *State v. Stevenson*, 297 Kan. 49, 50 (2013) (*Stevenson I*). The State charged Petitioner with premeditated first-degree murder,

1

presenting evidence that Petitioner's father was "incapacitated by blows to his head before he suffered crushing injuries consistent with being pinned by the bed of the truck." *Id.* Petitioner, on the other hand, argued that the hydraulic failure was accidental and that because of "his activities that day . . . [,] he lacked the opportunity to have killed his father and staged the accident." *Id.* at 51. In 2009, a jury in Gove County, Kansas convicted Petitioner of premeditated first-degree murder and the state district court sentenced him to life in prison without the possibility of parole for 25 years. *Id.* at 49, 51.

Petitioner pursued a direct appeal, but on April 12, 2013, the Kansas Supreme Court (KSC) affirmed Petitioner's conviction. *Id.* at 49-50. The following month, Petitioner filed in state district court a pro se motion for writ of habeas corpus under K.S.A. 60-1507. *Stevenson v. State*, 2017 WL 5180847, *2 (Kan. Ct. App. Nov. 9, 2017) (*Stevenson II*). The state district court appointed counsel to represent Petitioner and held a 2-day evidentiary hearing. In March 2016, it issued a lengthy order dismissing 11 of Petitioner's claims for lack of jurisdiction, dismissing 5 claims as untimely, and holding that Petitioner had not met his burden to show he was entitled to relief on the remaining claims. *Id.*

> Petitioner appealed, raising multiple claims:
>
> (1) his trial counsel was ineffective when counsel failed to present any evidence regarding unanswered phone calls made to Stevenson's father; (2) the State committed a *Brady* violation when it did not turn over cell phone records; (3) his trial counsel was ineffective when counsel failed to impeach a witness' testimony; (4) his trial counsel was ineffective when counsel failed to challenge the State's timeline; (5) his trial counsel was ineffective when counsel failed to call a favorable witness; (6) his trial counsel was ineffective when counsel failed to object to the State's closing arguments; (7) prosecutorial error occurred when the State failed to correct testimony it knew to be false; (8) prosecutorial error occurred when the State failed to inform Stevenson that witnesses would be testifying differently; and (9) prosecutorial error occurred when the State vouched for a witness' credibility during closing argument.

*Stevenson II*, 2017 WL 5180847, at *2.

During the appeal, Petitioner moved for the Kansas Court of Appeals (KCOA) to discharge Cheryl Stewart, the attorney appointed to represent him on appeal. Because that motion was denied, Petitioner's additional pro se motions were returned without being filed. (*See* Doc. 7, p. 19; Doc. 8-1, p. 25.) In an opinion issued on November 9, 2017, the KCOA held that Petitioner's claims of trial errors failed because he had not "include[d] in the record on appeal the transcript of the proceedings surrounding his underlying trial and conviction," which left the KCOA unable "to properly consider his claims." *Stevenson II*, 2017 WL 5180847, at *2, 4. Similarly, the failure to designate an adequate record on appeal precluded the KCOA from meaningfully reviewing the district court's decisions on Petitioner's requests for DNA testing. *Id.* at 4-6. Accordingly, the KCOA affirmed. *Id.* at 6.

On March 6, 2018, Petitioner filed in this Court a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and a memorandum in support. (Docs. 1 and 2.) When Petitioner resubmitted his petition on the required, court-approved form, it contained five grounds for relief. In Ground One, Petitioner alleged the ineffective assistance of counsel in his K.S.A. 60-1507 appeal. Ground Two alleged ineffective assistance of trial counsel by failing to present to the jury evidence of five unanswered calls to his father's cell phone, which was found near his father's body, covered in his blood.[1] Ground Three alleged that prosecutors knowingly used perjured testimony to create a "false timeline" and argue that Petitioner had the opportunity to kill his father, based on differences between the initial reports given to investigators by a State witness, Todd Stevenson[2], and Todd's subsequent trial testimony. (Doc. 4, p. 4, 6, 8-9.)

Ground Four alleged that the State failed to disclose evidence that would have exonerated

---

[1] Petitioner asserted that evidence of the timing of those calls "would indicate his death was before petitioner arrived" at the scene and that "cell phone location records (tower) would give absolute proof that his death was before the petitioner arrived—and supports petitioner's claim of Actual and Factual Innocence [*sic*]." (Doc. 4, p. 6.)
[2] *See Stevenson v. State*, 2023 WL 2723285, *3 (Kan. Ct. App. Mar. 31, 2023) (unpublished) (*Stevenson III*).

3

him—namely, "cell phone location ('tower') records" that Petitioner claimed would (1) prove his father's death occurred before Petitioner arrived at the scene, (2) prove Todd testified falsely, and (3) show both Petitioner's and his father's locations at 4:00 p.m. on the day in question. Petitioner asserted that the State's claim that these records do not exist was undermined by "evidence and statements made on the record." And, as Ground Five, Petitioner asserted the violation of his rights under the Confrontation Clause and that the State withheld an expert witness who would have testified to exculpatory information that could have altered the result of the trial. *Id.* at 15. Specifically, Petitioner argued:

> The information is in the form of an affidavit by a State's expert, whom tested the truck, stated; "It would not be possible for an individual reaching across the truck-frame around the area of the pump to lower the hoist." Directly contradicting the prosecution's theory of petitioner's involvement in the death of his father. This information was either inadvertently or by design suppressed from the jury, when in opening statement, prosecutor stated; "this witness will say the truck is in perfect working condition." This witness was never called on to testify, effectively suppressing the defense from cross-examination.

*Id.* (all errors in original). To his credit, Petitioner candidly admitted that none of the asserted Grounds were raised in his direct appeal, although he argued that any default of such claims should be excused. *Id.* at 5-11, 15-16; (*see also* Doc. 5).

On April 6, 2018, United States Senior District Judge Sam A. Crow, who was assigned to preside over this case, issued a notice and order to show cause (NOSC) explaining that the grounds in the petition "are subject to dismissal due to procedural default." (Doc. 6, p. 4.) Judge Crow further explained that federal habeas courts may consider procedurally defaulted claims only if the petitioner shows "cause for the failure to present the claim in state court and actual prejudice as a result of the violation of federal law or that the failure to consider the claim would result in a 'fundamental miscarriage of justice.'" *Id.* at 4-5. After setting forth the relevant standards, Judge Crow granted Petitioner time in which to make the required showing and time in which to submit

an amended petition "that presents claims that were properly exhausted in his direct appeal." *Id*. at 5-6.

Petitioner promptly filed an amended petition (Doc. 7) and, shortly thereafter, filed a response to the NOSC (Docs. 8 and 9). He later filed a second response to the NOSC (Doc. 10), a motion for status hearing (Doc. 11), and a motion for leave to exhaust newly discovered evidence (Doc. 14). On September 25, 2019, Judge Crow issued a memorandum and order dismissing this matter without prejudice. (Doc. 16.) The order explained in relevant part:

> Petitioner asserts that the failure to consider his defaulted claims would result in a fundamental miscarriage of justice. He asserts that he has made a colorable showing of his actual innocence that warrants review of his claims, pointing to the failure of trial counsel to introduce evidence of unanswered calls from his cell phone to that of his father, the victim, on the day of his death and the failure to introduce cell tower records for the two phones at trial. Finally, he notes the failure of his post-conviction appellate counsel to include trial transcripts in the record on appeal, which the KCOA found precluded review.
>
> . . . .
>
> The difficulty with petitioner's claim is that it does not appear that the cell tower records that he identifies as evidence of his actual innocence have ever been developed. In his motion to include or grant leave to exhaust newly discovered evidence (Doc. 14), he states that a blood-covered phone was discovered by the victim's body and taken into evidence by law enforcement, that the lead KBI investigator stated that no calls were made to the phone on the day of the victim's death, and that it later was determined that five calls were made to the phone on that day, which all went unanswered. According to petitioner, the State reported that it unsuccessfully attempted to get the cell tower data, and his counsel also sought the records from Verizon Wireless but was told they were not available. Therefore, on the present record, the Court cannot find that petitioner has presented new evidence that supports a claim of actual innocence sufficient to excuse procedural default.
>
> Petitioner asks the Court to order an evidentiary hearing and appoint counsel or, in the alternative, grant leave to exhaust his new claim in state court. *Id*. at p. 3. The Court finds that petitioner's request to pursue the production of cell tower records should be presented in the first instance to the state district court, and the Court will dismiss this matter without prejudice to allow him to do so.

(Doc. 16, p. 3-5.) In a footnote at the end of the language quoted above, Judge Crow stated: "After

5

proper presentation of this matter in the state courts, petitioner may move to reopen this matter." *Id.* at 5 n.1.

On February 25, 2021, Petitioner filed in state district court a second motion for habeas corpus relief pursuant to K.S.A. 60-1507, arguing that he is actually innocent of the crime of conviction. (Doc. 18, p. 1.) Petitioner's arguments in that motion can be organized by three general topics: (1) the allegedly false trial testimony of Todd Stevenson regarding the time that Petitioner arrived at the family farm on the day of his father's death; (2) information on Petitioner's father's cell phone that was not obtained and used at trial; and (3) the possibility of the State's theory of the crime. *See Stevenson v. State*, 2023 WL 2723285, *3 (Kan. Ct. App. Mar. 31, 2023) (unpublished) (*Stevenson III*). In this second K.S.A. 60-1507 proceeding, Petitioner moved for appointment of counsel, sought to further develop the cell phone information by forensic examination of his father's cell phone, and requested DNA testing of his father's coveralls. *Id.* at 3-4; (Doc. 18, p. 1).

The state district court held a hearing on the issues in June 2021 at which the State was represented by counsel and Petitioner proceeded pro se. *Id.* The district court then denied Petitioner's motion as untimely and successive, holding that Petitioner had not shown the manifest injustice required by state law to overcome these procedural bars. *See Stevenson III*, 2023 WL 2723285, at *4, 6 (citing K.S.A. 2020 Supp. 60-1507(f)). The district court also denied the motion for DNA testing. *Id.* at *5.

On appeal, the KCOA affirmed the holding that the second K.S.A. 60-1507 motion was untimely and Petitioner had not shown the manifest injustice statutorily required for the district court to extend the statute of limitations. *Id.* at *6-7, 9. The KCOA also denied a related motion "to obtain postconviction discovery of the cell phone," holding that Petitioner had "not shown a

6

reasonable possibility that there is discoverable information on the cell phone that could affect the outcome of this proceeding—that no reasonable juror would have convicted him." *Id.* at *7. With respect to the district court's denial of Petitioner's motion for DNA testing, however, the KCOA remanded for further proceedings because the district court had erred by holding a hearing on the motion at which the State was represented by counsel but Petitioner was not. *Id.* at 8-9. Petitioner's appointed appellate counsel filed a petition for review of the KCOA rulings adverse to Petitioner, which the KSC denied on April 23, 2023, and the remand proceedings began. (Doc. 18, p. 2.)

By September 2024, Petitioner had been appointed counsel for the remand proceedings and the district court held a hearing on the motion for DNA testing. *Id.* at 2-3. It denied the motion in a written order entered on September 17, 2024. *See Stevenson v. State*, Gove County District Court Case No. 2021-CV-000002. The publicly available records of the Gove County District Court further reflect that Petitioner's counsel filed a notice of appeal on September 23, 2024 and that Petitioner filed a pro se motion to reconsider on October 1, 2024.

On February 27, 2025, Petitioner filed in this Court a pro se motion to reopen the federal habeas matter Judge Crow dismissed in 2019. (Doc. 18.) The following day, this matter was reassigned to the undersigned for all further proceedings. (Doc. 19.) On March 7, 2025, the Court issued a memorandum and order to show cause (MOSC) granting the motion to reopen and directing Petitioner to supply additional information and to address anew the issue of procedural default. (Doc. 21.) Petitioner timely filed his response to the MOSC on April 18, 2025. (Doc. 22.)

## Discussion

The Court has carefully read and considered the response and attachments thereto. Even liberally construed, the response disputes the prior finding of procedural default only with respect to Ground One, which was raised to the state courts during Petitioner's recent remand proceedings.

In response to the Court's request for additional information on the status of those proceedings, Petitioner advises the Court that he was unaware that his counsel had filed a notice of appeal and that he filed the pro se motion to reconsider in the related K.S.A. 60-507 remand proceedings "as a delay tactic to file the Notice of Appeal should [he] decide to do so." (Doc. 22, p. 5.) He further advises that he has now sent a request to the state district court to withdraw the notice of appeal and the motion to reconsider. *Id.*

Petitioner asserts that "he has exhausted the issues of DNA testing of the coveralls in the state courts," noting that the KCOA issued a mandate in his appeal of the second K.S.A. 60-1507 motion before the remand hearing occurred. *Id.* Petitioner is reminded that in order to exhaust issues, he "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" (Doc. 6, p. 4 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).) *See also* Kansas Supreme Court Rule 8.03B(a) ("In all appeals from criminal convictions or post-conviction relief on or after July 1, 2018, . . . when a claim has been presented to the Court of Appeals and relief has been denied, the party is deemed to have exhausted all available state remedies.").

If Petitioner fails to appeal the most recent denial of his motion for DNA testing, any arguments made at that hearing that were not previously made and rejected on the merits by the required Kansas appellate court are not exhausted. Simply put, the mandate does not equal exhaustion of the issue because further proceedings occurred thereafter in the state district court at the direction of the appellate opinion. Thus, the holdings made at the remand hearing have not yet been presented to the KCOA for review. Although this Court will not give legal advice, Petitioner is cautioned to carefully consider the consequences of abandoning his appeal in that matter.

That being said, the potentially ongoing proceedings in state court on Petitioner's motion

for DNA testing do not affect the exhaustion or procedural default of Petitioner's constitutional arguments that he believes would be supported by the results of such testing. Put another way, "[s]uccess in his suit for DNA testing would not 'necessarily imply' the invalidity of his conviction. While test results might prove exculpatory, that outcome is hardly inevitable; . . . results might prove inconclusive or they might further incriminate [the petitioner]." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Moreover, because there is no independent constitutional right to postconviction DNA testing, the denial of such testing is not a basis in and of itself for relief under 28 U.S.C. § 2254. Rather, Petitioner seeks the DNA testing to further his argument in Ground One that his DNA is not on his father's coveralls as it would be if the State's theory of the crime were accurate. Petitioner's argument that the State's theory of the crime was impossible was included in the second K.S.A. 60-1507, which was denied as untimely, and is thus procedurally defaulted. The connection of the DNA testing to Petitioner's constitutional arguments do not render the DNA testing a constitutional issue.

The Court further notes that Petitioner clarifies in his response to the MOSC the nature of the grounds asserted in his amended petition and the constitutional violations on which he bases those grounds for relief. (Doc. 22, p. 2-4.) Those clarifications need not be discussed in detail in this order because Petitioner's response does not argue that Grounds Two through Four are procedurally defaulted. He does, however, argue that this Court should consider the merits of the grounds in his amended petition despite the procedural default.

Petitioner focuses on his second K.S.A. 60-1507 motion, which—on the information now before this Court—appears to have included the arguments made in his amended petition for federal writ of habeas corpus and also argued that ineffective assistance of counsel caused the failure to raise the arguments in his first K.S.A. 60-1507 in a manner in which would have allowed

9

the KCOA to consider their merits. As noted above, the state district court denied the second K.S.A. 60-1507 motion as untimely, a decision affirmed by the KCOA on appeal.

"When a state court dismisses a federal claim on the basis of noncompliance with adequate and independent state procedural rules, federal courts ordinarily consider such claims procedurally barred and refuse to consider them." *Banks v. Workman*, 692 F.3d 1133, 1144 (10th Cir. 2012). The time limitation in K.S.A. 60-1507(f) is "an independent and adequate state procedural bar" in this context. *See Francis v. Cheeks*, 2022 WL 3018069, *12 (D. Kan. July 29, 2022) (unpublished). Thus, in order for this Court to consider Petitioner's claims despite the procedural default, he must either show cause and prejudice or demonstrate that the failure to consider the defaulted claim would result in a fundamental miscarriage of justice. *See Fontenot v. Crow*, 4 F.4th 982, 1028 (10th Cir. 2021) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

**Cause and Prejudice**

First, Petitioner argues that good cause existed for his failure to timely file his second K.S.A. 60-1507 motion. He asserts that he "was unaware that a filing of a [28] U.S.C. [§] 2254 [petition] would not stop the clock [on] the one year limit" for filing a K.S.A. 60-1507 motion. (Doc. 22, p. 4.) "[I]gnorance of the law is not a valid excuse for failing to satisfy procedural requirements." *Valenzuela v. Silversmith*, 699 F.3d 1199, 1207 (10th Cir. 2012) (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)). "It is well-established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).

Petitioner's misunderstanding of the effect his federal habeas case would have on the statute of limitations for filing a K.S.A. 60-1507 motion does not constitute good cause for the procedural default of failing to file his K.S.A. 60-1507 motion on time. In addition, the Court notes

10

that Petitioner waited more than 16 months after Judge Crow dismissed this federal habeas action to file his second K.S.A. motion. (*See* Doc. 16 (dismissing this matter on September 25, 2019) and Doc. 18, p. 1 (stating that Petitioner filed his second K.S.A. 60-1507 motion on February 25, 2021).) The Court concludes that Petitioner has failed to sufficiently show cause and prejudice that would allow this Court to consider the merits of his procedurally defaulted arguments.

## Fundamental Miscarriage of Justice

In addition, Petitioner argues that failure to consider the claims in this matter would result in a fundamental miscarriage of justice. As the Court explained in the MOSC:

> To proceed under this exception, he "must make a colorable showing of factual innocence." *See Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). A petitioner seeking relief under a defaulted claim and asserting a claim of innocence must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The evidence must be new and reliable. *See Schlup*, 513 U.S. at 324. The United States Supreme Court has explained that on a claim of entitlement to the actual innocence exception, "[t]he habeas court must make its determination . . . 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 328.
>
> In the time since Judge Crow dismissed this matter, the Tenth Circuit has further clarified the application of the actual innocence exception. It has explained that to obtain this exception, a federal habeas petitioner is not required to conclusively exonerate himself; rather, his "burden at the gateway stage is to demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'" *See Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *House*, 547 U.S. at 538, 553 (2006)). However,
>
>> tenable actual-innocence gateway pleas are rare, arising only in an extraordinary case. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.
>
> *Fontenot*, 4 F.4th at 1031 (citations and quotation marks omitted). "An actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021).

11

(Doc. 21, p. 18-19.)

Liberally construed, the filings now before the Court identify certain cell phone data as the new evidence that would make it more likely than not that no reasonable juror would have convicted Petitioner. Specifically, Petitioner points to records of "cell phone tower data" that contain information regarding the locations of Petitioner's cell phone and perhaps his father's cell phone on the day his father died and records of unanswered calls to Petitioner's father's cell phone on the day in question. Liberally construed, Petitioner may also intend the Court to consider as new evidence the DNA testing results he anticipates from the testing he seeks. As noted above, however, speculative arguments about what unobtained evidence would show are disfavored as support for an actual innocence argument.

In order to determine whether and to what extent this evidence would satisfy the standard required to qualify for the actual innocence exception to the general rule that procedurally defaulted claims are not considered in a federal habeas matter under § 2254, the Court must "consider all the evidence, old and new, incriminating and exculpatory" and conduct "'a holistic judgment about all the evidence[] and its likely effect on reasonable jurors applying the reasonable-doubt standard.'" *See Fontenot*, 4 F.4th at 1031-32 (internal quotation marks and citations omitted). This type of holistic judgment requires the examination of the record of Petitioner's criminal proceedings, which are not currently before this Court.

That being said, however, the Court will at this time deny without prejudice Petitioner's motion (Doc. 23) for an order directing the Kansas Attorney General to release records it declined to release in response to Petitioner's request under the Kansas Open Records Act (KORA). Discovery has not been authorized in this matter, *see* Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, and this Court does not see the need for discovery at

this point in time.

Rather, the Court concludes that a limited Pre-Answer Response (PAR) from Respondent is appropriate. *See Blacklock v. Schnurr*, 2024 WL 359330, *6-7 (D. Kan. Jan. 31, 2024) (unpublished); *Denson v. Abbott*, 554 F. Supp. 2d 1206 (D. Colo. 2008) (unpublished). The PAR should address Petitioner's argument that the failure to consider the merits of the procedurally defaulted grounds asserted in the amended complaint will result in a fundamental miscarriage of justice. The PAR should not address the merits of Petitioner's asserted grounds for relief. If this matter passes the initial Rule 4 screening, Respondent will be granted time in which to file an answer, as contemplated by Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, in which he may address the merits of the asserted grounds for relief. In addition, Respondent shall cause to be forwarded to this Court for examination and review the records and transcripts, if available, of the criminal proceedings complained of by Petitioner.[3] Petitioner will be given the opportunity to file a written reply to the PAR if he wishes to do so.

**IT IS THEREFORE ORDERED THAT** the motion for order (**Doc. 23**) is **denied without prejudice.**

**IT IS FURTHERE ORDERED THAT** Respondent is granted to and including **June 23, 2025**, in which to file a limited Pre-Answer Response that complies with this order. On or before the date he files the PAR, Respondent shall cause to be forwarded to this Court for examination and review the records and transcripts, if available, of the criminal proceedings that led to the conviction at issue in this matter. When the Rule 4 screening of this matter is complete, the clerk of this Court will return to the clerk of the proper state court all state court records and transcripts

---

[3] These records are necessary for the Court to conduct the required holistic review of the evidence presented at trial and consider how a reasonable juror's verdict would be affected by inclusion of the new reliable evidence Petitioner has identified. *See Fontenot*, 4 F.4th at 1031-32.

as required.

**IT IS FURTHER ORDERED THAT** Petitioner is granted to and including **July 25, 2025**, to file a reply to the PAR if he wishes to do so.

**IT IS FURTHER ORDERED THAT** the clerk of this Court transmit copies of this order to Petitioner and to the office of the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

DATED:   This 22nd day of April, 2025, at Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
United States District Judge